IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CHARLES WESLEY BAKER,**

        Petitioner,

v.                                       Civil Action No. 2:09cv4
                                           (Judge Maxwell)

**KUMA DEBOO, Warden,**

        Respondent.

## **OPINION/REPORT AND RECOMMENDATION**

### I. **Procedural History**

On July 25, 2008, the *pro se* petitioner filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (dckt. 1). The petitioner paid the required $5.00 filing fee on February 9, 2009. Therefore, on March 12, 2009, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate at that time (dckt. 14). Consequently, the respondent was directed to show cause why the petition should not be granted.

On April 8, 2009, the respondent filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (dckt. 16) and a memorandum in support (dckt. 17). Because the petitioner is proceeding without counsel, a Roseboro Notice was issued on April 16, 2009 (dckt. 19). The petitioner filed his response to the respondent's motion (dckt. 24) on May 5, 2009, as well as a motion to amend his petition (dckt. 23).

The petitioner subsequently filed a renewed motion to amend his petition (dckt. 26), which the undersigned reviewed June 1, 2009. In an Order entered that date, the petitioner's motion to

amend was granted (dckt. 28).

Thereafter, on June 17, 2009, the undersigned reviewed the petition, the respondent's motion, the petitioner's response and his amended claims. In an Order entered that date, the undersigned found that the petitioner's response to the respondent's motion clarified his claims to such an extent that the respondent's motion was largely unresponsive to the actual claims at issue (dckt 33). Moreover, the undersigned noted that the respondent had not had an opportunity to respond to the petitioner's amended claims. Thus, the respondent was directed to file a supplemental response. The respondent did so on July 7, 2009 (dckt. 35).

On July 10, 2009, the petitioner filed a motion for clarification (dckt. 36). In the motion, the petitioner seeks to know whether the Bureau of Prisons has the authority to transfer him to another jurisdiction while he has pending litigation.

On July 24, 2009, the petitioner filed a response to the respondent's supplemental response (dckt. 38).

On August 14, 2009, the petitioner filed a motion for entry of default judgment or for summary judgment (dckt. 40). In the motion, the petitioner asserts that the respondent has not appropriately responded to his claims. Thus, the petitioner asserts that the respondent has defaulted and that judgment should be entered in his favor.

This case is currently before the undersigned for a report and recommendation on the pending motions and any responses thereto.

## II. Contentions of the Parties

**A. The Petition**

In the petition, the petitioner asserts four issues for the court's review:

(1) Does the principles of equity, what is fair and right, require that petitioner should be released from federal custody based on the fact that he has served over 24 years, well over what the crime requires, for a non-violent mail fraud-money order offense, which occurred between the years of 1976 and 1978?

(2) Was the ex post facto clause of the United States Constitution violated when the U.S. Parole Commission ("the Commission"), the Federal Bureau of Prisons ("BOP"), and prison staff, used and relied on the Sentencing Reform Act of 1984, and the U.S. Sentencing Guidelines of 1987, instead of using and relying on the Parole Commission and Reorganization Act of 1976, as the law in determining how his sentence should be executed, when the sentencing laws after the Parole Commission Act of 1976 are more harsh and severe?

(3) Is due process under the Fifth Amendment to the United States Constitution violated when the laws that govern the Commission between 1976 and 1978 have changed so drastically until there is a void – vagueness and uncertainty, creating an inconsistency among correctional officers on how to apply good time credit, street credit after parole revocation, and how to determine one-third of the maximum sentence imposed by the Court, thereby causing petitioner to serve more time then what the law requires?

(4) If the Commission relinquishes jurisdiction over the petitioner, after default judgment, allowing him to believe that he has the right to cease all participation in the parole contract, does the Commission have the right to reclaim jurisdiction after default judgment?

In support of his petition, the petitioner asserts that the crimes he is convicted of occurred between 1976 and 1978. Specifically, the petitioner asserts that while in administrative segregation

in an Indiana State prison, he attempted to deposit 14 letters into the institutional mail which contained altered money orders. The money orders were intercepted and turned over to United States Postal Inspectors. Although an indictment was sought at the time of the offense, Assistant United States Attorney Richard L. Keiser, declined to prosecute. Mr. Kieser's reasons for not prosecuting allegedly included: the life sentence the petitioner was serving for the State; it would not serve the interest or justice or the public interest to remove the petitioner from State custody to pursue federal charges; and because he felt that prison authorities had the appropriate administrative remedies to mete out sufficient punishment for the committed offense. As a result, the petitioner asserts that he received prison sanctions for his conduct, including eight months of administrative segregation.

However, on June 29, 1982, less than two months prior to the tolling of the statute of limitations for the crime, a federal grand jury sitting in South Bend, Indiana, indicted the petitioner on 28 counts. More specifically, the petitioner asserts that he was charged with Mail Fraud (18 U.S.C. § 1341), Postal Money Orders (18 U.S.C. § 500), Conspiracy (18 U.S.C. § 371), Possession of False Papers to Defraud (18 U.S.C. § 1002) and Aiding and Abetting (18 U.S.C. § 2). The petitioner successfully challenged these charges on Speedy Trial and Double Jeopardy grounds and the indictment was dismissed.

On appeal, the Seventh Circuit Court of Appeals reversed the district court and reinstated the indictment. The case was eventually transferred to Hammond, Indiana, where trial commenced. The petitioner was convicted on 22 of the 28 counts on February 17, 1984. Although the jury allegedly requested the petitioner receive a lenient sentence, he was sentenced to an aggregate term of 66 years imprisonment on April 5, 1984. That sentence was later reduced to 26 years pursuant to a Rule 35 motion to reduce or correct sentence.

In his petition, the petitioner argues that he was convicted under five separate statutes, "including conspiracy," and that each carried a statutory maximum of five years. Therefore, the petitioner asserts that his maximum sentence could not exceed 25 years imprisonment. Because the sentencing judge imposed punishment for each of the altered money orders (14), plus a separate punishment for possession of the money orders, aiding and abetting, conspiracy and mail fraud, the petitioner asserts that his sentence exceeds the statutory maximum. The petitioner acknowledges that although each individual sentence fell below the statutory maximum, in combination, the total sentence went beyond what was prescribed by law and what the jury had authorized. Thus, the petitioner asserts that his sentence is illegal.

In the motion for declaratory judgment accompanying his petition, the petitioner further asserts that he has served over 24 years on his sentence due in part to numerous changes in the parole and sentencing guidelines. The petitioner asserts that the parole and sentencing guidelines have changes so drastically in the last 30 to 32 years that no one has been able to determine how to correctly apply the various guidelines to his sentence, nor how to apply credit for good time and street time. Moreover, the petitioner asserts that his sentence is being miscalculated. He further questions whether the Commission or the BOP has the "legal right to re-adjudicate [his] sentence and re-sentence [him] to a new sentence that extends him over and beyond the time which the court originally sentence (sic) him to?" If not, the petitioner asserts that he is entitled to immediate release.

**B. The Respondent's Motion**

In response to the petition, the respondent asserts that the petitioner challenges the Commission's determination that he be denied reparole under the reparole guidelines. Moreover, the respondent asserts that the petition should be denied or dismissed for the following reasons:

(1) the petitioner failed to file an appeal to the Commission's National Appeals Board and his claims are therefore not exhausted;

(2) the petitioner seeks a remedy outside of the Court's power of judicial review;

(3) the ex post facto clause of the United States Constitution was not violated as there is no evidence that the United States Sentencing Guidelines were used to deny the petitioner parole; and

(4) the petitioner fails to allege an injury due to the misapplication of sentence credit laws and fails to produce any evidence to support his non-jurisdiction argument as a result of "default judgment."

## C. The Petitioner's Response

In his response to the respondent's motion, the petitioner merely reiterates the claims raised in the petition and cites to the specific exhibits as proof of his claims. In addition, the petitioner clarifies that his petition is not a claim for reparole, but rather, a claim for release from custody. More specifically, the petitioner asserts that his claim is that the Commission and the BOP have no authority or jurisdiction over him. The petitioner asserts that he will more fully clarify his claims in an amendment.

## D. The Petitioner's Amendment

In his amendment, the petitioner asserts the following additional question for the Court's consideration:

(5) Does the federal district court have subject matter jurisdiction pursuant to 28 U.S.C. § 2241 to release petitioner from prison if he is serving a federal sentence that is not on the court docket record, not in the judgment and commitment order, and not in the PSI report as

a charge that the jury found him guilty of, which has caused the petitioner to be deprived of his appeal rights for 25 years and has caused him to serve 4 years and 3 months passed his expiration full term release date?

In support of this claim, the petitioner asserts that the respondent's exhibits establish that he has been incarcerated for 25 years and three weeks for a conspiracy charge that is not in the record. Specifically, the petitioner asserts that although his indictment charged a conspiracy, and the jury found him guilty of the same, neither his PSI, nor his judgment and commitment order, reference such a charge. Thus, the petitioner appears to argue that he was improperly sentenced to the conspiracy conviction, that it should not be used to calculate his full term sentence, and that he should therefore be released from custody.

E. **The Respondent's Supplemental Response**

In the supplemental response, the respondent contends that the gravamen of the petitioner's petition is that his sentence has not been properly calculated. In support of her contention that the petitioner's sentence has been properly computed, the respondent asserts the following factual and procedural history related to the calculation of the petitioner's sentence:

(1) Petitioner was sentenced in Wayne County, Indiana, to a life term for Murder in Perpetration of Robbery. While serving that sentence, the petitioner committed the instant federal offense of Mail Fraud, Aiding and Abetting, Counterfeiting and Forging Money Orders, and Possession of False Money Orders to Defraud.

(2) On January 27, 1984, petitioner was borrowed from state authorities to answer the federal charges. Petitioner was found guilty, sentenced to 66 years imprisonment on January 27, 1984, and returned to state custody. His federal sentence was later reduced to 26 years imprisonment.

(3) Petitioner was released to federal custody on July 10, 1984. Thus, his federal sentence was computed based on a 26-year sentence commencing on that date, with no jail credit.[1]

(4) Petitioner was first released to parole on his federal sentence on March 9, 1993. At that time, the petition had 6,331 days remaining until his full term release date of July 9, 2010. However, the petitioner violated his parole and was returned to federal custody on July 5, 1994. The petitioner's parole was subsequently revoked and he received credit on his federal sentence for all the time he spent on parole. Therefore, at the time his parole was revoked, the petitioner had 5,849 days remaining to be served on his federal sentence.

(5) On November 1, 1995, the petitioner was released to parole supervision for a second time. At that time, the petitioner had 5,364 days remaining until his full term expiration date of July 9, 2010. The petitioner again violated the terms of his parole and his parole was revoked. This time, however, the petitioner received no credit on his federal sentence for the time he was on parole, which resulted in a loss of 77 days credit. Resp't Supp. Ex. (Dckt. 35-1) (Declaration of Forest B. Kelly) at ¶ 19-22, 34. Thus, when his sentence was recalculated, the petitioner had 5,364 days remaining until his new full term expiration date of September 24, 2010.[2]

(6) On January 13, 1999, the petitioner was released to parole for a third time. At that time, there were 4,272 days remaining until his new full term expiration date. Once again, the petitioner

---

[1] Petitioner was in custody serving a state sentence when his federal offenses were committed. Thus, the petitioner was "borrowed" from state custody to answer his federal charges. The petitioner's federal sentence was ordered to run consecutive to his state sentence and all the time the petitioner was in federal custody pursuant to the writ was credited to his state sentence. Thus, the petitioner received no jail credit on his federal sentence for any of the time served prior to imposition of said sentence. See United States v. Evans, 159 F.3d 908, 911 (4th Cir. 1998); see also Causey v. Civiletti, 621 F.2d 691 (5th Cir. 1980).

[2] The petitioner's full term release date changed because of the 77 days of street time that were forfeited.

8

violated the terms of his parole and his parole was revoked. Moreover, the petitioner received credit on his federal sentence only for the time between his date of release, until November 3, 1999, but not from November 4, 1999 to November 16, 2000, resulting in a loss of 379 days credit. Resp't Supp. Ex. (Dckt. 35-1) (Declaration of Forest B. Kelly) at ¶ 25-26, 34. Thus, when his sentence was recalculated, the petitioner had 3,978 days remaining until his new full term release date of October 8, 2011.[3]

(7) On August 16, 2007, the petitioner was released from custody via mandatory release. At that time, the petitioner had 1,514 days remaining until his full term expiration date. When the petitioner violated the terms of his parole yet again, his parole was revoked. Because the petitioner received credit on his federal sentence for time spent on mandatory release, there were 1,341 days remaining on his federal sentence, and his full term expiration date remained October 8, 2011. It appears the petitioner has remained incarcerated since that date and his full term release date is still October 8, 2011. Resp't Supp. Ex. (Dckt. 35-1) (Declaration of Forest B. Kelly) at ¶ 39.

### III. Analysis

**A. Issue One - Principles of Equity Claim**

In this ground, the petitioner asks whether the principles of equity require that he be released from prison because he has served over 24 years, more than the time required for the crimes committed. Although the basis for this ground is not entirely clear, order to prevail on this claim, the petitioner would have to prove that his sentence was either improperly imposed or that it has been miscalculated by the BOP.

---

[3] The petitioner's full term release date changed because of the 379 days of street time that were forfeited.

1. Improper Sentence

The primary means of collaterally attacking a federal conviction and sentence is through a motion pursuant to 28 U.S.C. § 2255. A § 2241 petition is used to attack the manner in which a sentence is executed. Thus, a § 2241 petition that challenges a federal conviction and sentence is properly construed to be a § 2255 motion. The only exception to this conclusion is where a § 2241 petition attacking a federal conviction and sentence is entertained because the petitioner can satisfy the requirements of the "savings clause" in § 2255. Section 2255 states:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.*

28 U.S.C. § 2255 (emphasis added).

The law is clearly developed, however, that merely because relief has become unavailable under § 2255 because of a limitation bar, the prohibition against successive petitions, or a procedural bar due to failure to raise the issue on direct appeal, does not demonstrate that the § 2255 remedy is inadequate of ineffective. In re Vial, 115 F. 3d 1192, 1194 (4th Cir. 1997). The Fourth Circuit has examined the prerequisites for finding that § 2255 is an inadequate or ineffective remedy. In the case of In re Jones, 226 F.3d 328 (4th Cir. 2000), the court concluded that:

> § 2255 is inadequate and ineffective to test the legality of a conviction when: (1) at the time of the conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gate-keeping provisions of § 2255 because the new

rule is not one of constitutional law.

Jones, 226 F.3d at 333-34.

To the extent that the petitioner asserts that his sentence was not properly imposed, such a claim is a challenge to the imposition of his sentence and not its means of execution. Therefore, this type of issue should have been raised on direct appeal or in a motion pursuant to 28 U.S.C. § 2255. Moreover, there is nothing in the petitioner's § 2241 petition which demonstrates that he meets the Jones requirements. Consequently, the petitioner has not demonstrated that § 2255 is an inadequate or ineffective remedy, and he cannot challenge the imposition of his sentence in the instant § 2241 petition.

### 2. Calculation of his Sentence

It is clear that the BOP has properly calculated the petitioner's sentence. The petitioner received a 26-year sentence, commencing upon his release from state custody on July 10, 1984. The BOP has calculated the petitioner's sentence as of that date and for that period of time. The petitioner has received credit on his federal sentence for all time in federal custody, and for periods of parole as granted by the Commission. Thus, the petitioner's sentence has been properly calculated. See Resp't Supp. Ex. (Dckt. 35-1) (Declaration of Forest B. Kelly) at Att. 1-18.

### B. Ground Two - Ex Post Facto Claim

The Ex Post Facto Clause "forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time committed; or imposes additional punishment to that then prescribed." Weaver v. Graham, 450 U.S. 24, 28 (1981) (internal quotations omitted). The central concerns of this provision are "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when

the crime was consummated." Id. at 30. "To fall within the ex post facto prohibition, a law must be retrospective - - that is, it must apply to events occurring before its enactment - - and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997).

In this ground, the petitioner asserts that the Commission and the BOP have violated the ex post facto clause by relying on the Sentencing Reform Act of 1984 and the U.S. Sentencing Guidelines of 1987, instead of the Parole Commission and Reorganization Act of 1976. However, the petitioner has failed to provide any evidence to support this claim.

As to the Commission, in making parole decisions in the petitioner's case, the Commission utilized its own parole guidelines, not the Sentencing Reform Act of 1984 or the U.S. Sentencing Guidelines of 1987. This is evidenced by the various notices issued by the Commission in the petitioner's case. Resp't Supp. Ex. (Dckt. 35-1) (Declaration of Forest B. Kelly) at Att. 7, 11, 14 and 17. As the Commission never applied the Sentencing Reform Act of 1984, or the U.S. Sentencing Guidelines of 1987, to the petitioner's case, his ex post fact claim as to the Commission is without merit.

As to the BOP, the BOP would have no reason to apply the U.S. Sentencing Guidelines to the calculation of the petitioner's sentence. And, it would only utilize the Sentencing Reform Act or the parole regulations, to the extent necessary to calculate the petitioner's sentence. Upon a review of ground one, the undersigned has already determined that the petitioner's sentence has been appropriately calculated. Moreover, the petitioner has provided no evidence which shows that the BOP applied the provisions of the Sentencing Reform Act of 1984 in calculating his sentence. Thus, his ex post facto claim as to the BOP is also without merit.

## C. Ground Three - Sentence Improperly Calculated due to Vagueness of Regulations

In this ground, the petitioner asserts that changes in the parole regulations over the years since his conviction and sentence have resulted in the regulations being vague and uncertain. Thus, the petitioner asserts that corrections officials have inconsistently applied those rules as they apply to good time credit, street time credit and mandatory release dates. The petitioner further asserts that due to such confusion, his sentence has not been properly calculated.

First, the Court notes that the petitioner fails to point to any particular change in the parole regulations which has lead to the regulations being vague or uncertain. Moreover, the petitioner fails to identify any specific example of how the regulations are being applied inconsistently, either to him or anyone else. The BOP has credited the petitioner's federal sentence with all the applicable time spent in federal custody, and on parole, in compliance with its statutory duties and as directed by the Commission. The petitioner's sentence has been appropriately calculated and there is no evidence that the regulations have been misapplied in his case, for vagueness or any other reason. Moreover, the petitioner fails to show how any change to the parole regulations has been detrimental to his sentence calculation. Accordingly, this ground is without merit.

## D. Ground Four - Commission's Lack of Jurisdiction Over Petitioner

In this ground, the petitioner asserts that the Commission has relinquished jurisdiction over him, so that he no longer has to participate in his parole contract. This claim is simply without merit. The petitioner is subject to federal custody, and/or supervision by the Commission until the full term expiration of his sentence. As has been established herein, the petitioner's full term expiration date is October 8, 2011. Thus, the Commission has never lacked jurisdiction over the petitioner in making parole decisions in his case.

**E.   Ground Five - Serving a Sentence not in the J & C or PSI**

In ground five, the petitioner asserts that he is serving a sentence that is not in his Judgment and Commitment Order ("J&C"), nor is it addressed in his Presentence Investigation Report ("PSI"). Specifically, the petitioner asserts that his indictment contained a conspiracy charge. Additionally, the petitioner asserts that he was found guilty of the conspiracy charge by the jury. The petitioner further asserts that his sentence was calculated based on the conspiracy charge and that he received more time because of that charge. However, the petitioner asserts that the conspiracy charge is not mentioned on his J&C or in his PSI. Thus, he argues that his sentence was incorrectly calculated based on the conspiracy charge and without it, his sentence would have been less.

As was discussed in ground one herein, this claim is a direct challenge to the imposition of the petitioner's sentence. The petitioner's J&C states that he was convicted of numerous counts of mail fraud, aiding and abetting, counterfeiting and forging money orders. The J&C does not mention a conspiracy charge, nor does it sentence the petitioner for one. To the extent that the petitioner challenges the basis for his sentence, he is directly challenging the imposition of his sentence. Therefore, 28 U.S.C. § 2241 is not the proper avenue to address this claim. See In re Vial, *supra*.

**IV.   Petitioners' Motion for Default or for Summary Judgment**

In the motion, the petitioner asserts that the respondent has not appropriately responded to his claims. Thus, the petitioner asserts that the respondent has defaulted and that judgment should be entered in his favor. However, the undersigned notes that the claims raised in the petition were not entirely clear. In fact, when the petitioner clarified his claims on one occasion and amended them on another, he acknowledged that his claims were not clearly identifiable in the petition. The Court recognizes that the petitioner is proceeding *pro se* and that his claims are entitled to liberal

interpretation. However, liberal interpretation does not require the Court, or anyone else, to make the petitioner's claims for him. The respondent answered the petitioner's claims as she saw them. To the extent that the petitioner's claims were not clear, he was given the opportunity to clarify and amend his claims. For that reason, the respondent was given the opportunity to file a supplemental response. Based on the record in this case, the respondent clearly tried to answer the petition as best she could. There is no indication that the respondent attempted to avoid or mislead the court in any way. Thus, default, or summary judgment in the petitioner's favor, is not appropriate for the reasons given in the petitioner's motion. See Fed.R.Civ.P. 55.

## V. Recommendation

For the reasons set forth herein, the undersigned recommends that the respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (dckt. 16) be **GRANTED** and this case be **DENIED** and **DISMISSED with prejudice** from the active docket of the Court. For the same reasons, the undersigned also recommends that the petitioner's Motion for Leave of Court to Enter Default and Motion for Summary Judgment (dckt. 40) be **DENIED**.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: September 3, 2009.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE